UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELICA M. AVILA,<br><br>        Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>        Defendant. | Case No. 1:21-cv-01283-BAM<br><br>**ORDER REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Docs. 23, 31) |

**INTRODUCTION**

Plaintiff Angelica M. Avila ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[1]

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record as a whole

---

[1] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Docs. 14, 32, 33.)

1

and based upon proper legal standards. Accordingly, this Court will deny Plaintiff's motion for summary judgment, deny Plaintiff's appeal, and affirm the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed an application for disability insurance benefits on January 17, 2018. AR 175-77, 178-79.[2] Plaintiff alleged that she became disabled on July 2, 2013, due to C5-7 anterior cervical discectomy fusion, neck and shoulder pain, and inability to sleep/pain. AR 217. Plaintiff's application was denied initially and on reconsideration. AR 86-90, 94-98. Subsequently, Plaintiff requested a hearing before an ALJ. Following a hearing, ALJ Kathleen Laub issued an order denying benefits on March 9, 2020. AR 19-30, 36-58. Thereafter, Plaintiff sought review of the decision, which the Appeals Counsel denied, making the ALJ's decision the Commissioner's final decision. AR 6-10. This appeal followed.

### Hearing Testimony

ALJ Laub held a video hearing on February 4, 2020. Plaintiff appeared with her attorney, Jonathan Pena, and an interpreter. Pat Pauline, an impartial vocational expert, also appeared and testified. AR 36-37.

In response to questions from the ALJ, Plaintiff testified that she was 56 and had a sixth-grade education. She underwent a cervical spine fusion. The surgery helped a little bit, but her pinkie, ring finger, and middle finger on the left hand still go numb most of the time. If she carries anything with her left arm, her fingers go numb. Even if she does not carry anything, they go numb. She takes gabapentin, which relieves the pain for a while  She no longer has side effects from the medication. The surgeon said she needs another surgery. AR 40-44.

For the period between July 2013 and December 2018, Plaintiff worked for three months and then they did the surgery. After the surgery, she could not work. There are days when all she can do is make something to eat. She drives and goes grocery shopping if there is no one there to help her.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

She has taken care of her grandchildren with her husband. The youngest of her grandchildren is four. She watches TV during the day. AR 45-48.

In response to questions from her attorney, Plaintiff testified that after surgery she has pain in her neck and in her left arm. On an average day, her pain level is an eight out of ten. She did therapy for her left shoulder, but it did not help her much. After her surgery, the most she was able to lift was about 10 pounds. She can reach in front her with both hands below the shoulder level. She can use her arms for about half an hour or an hour before she has to take a break for five minutes. AR 48-50.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE. The VE characterized Plaintiff's past work as sorter and box maker. AR 51-52. The ALJ also asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume an individual with Plaintiff's same age, education, and past work experience. This individual could work at the light exertional level with the following additional limitations: could never climb ladders, ropes, or scaffolds, could occasionally climb ramps or stairs, balance, stoop, kneel, and crouch, could never crawl, could never reach or lift overhead with the bilateral upper extremities, could tolerate occasional exposure to vibration and hazards, such as unprotected heights and heavy mechanical machinery like a jackhammer or tractor. The VE testified that such an individual could perform Plaintiff's past work as a sorter as it is customarily performed. This individual also could perform other work in the national economy, such as marker, cafeteria attendant, and cleaner/household. AR 52-53.

For the second hypothetical, the ALJ asked the VE to assume an individual with Plaintiff's same age, education, and past work experience with the same limitations as set forth in hypothetical one with the following additional limitations: will require a five-minute break every hour with the use of the arms to stretch. The VE would not preclude work entirely, but suggested that it could be somewhat problematic. AR 53-54.

For the third hypothetical, the ALJ asked the VE to assume an individual of Plaintiff's same age, education, and past work experience with the same limitations set forth in the second hypothetical with the additional limitation that the individual would be off task during the five-minute breaks. The VE would not preclude employment based on that limitation, and testified that the jobs of marker, cleaner/housekeeper, and cafeteria attendant could still be available as the limitation would only be

two additional five-minute breaks during the day, along with the morning break, the lunch period, and the afternoon break. AR 54-55.

For the fourth hypothetical, the ALJ asked the VE to assume an individual with Plaintiff's same age, education, and past work experience with the same limitations set forth in the third hypothetical with an additional limitation that the individual would be off task approximately 15 percent of the workday due to pain. The VE testified that such an individual could not perform any work in the national economy. AR 56.

For the fifth hypothetical, Plaintiff's attorney asked the VE to consider the individual in hypothetical one, but limit that individual to frequent handling with the left upper extremity. The VE confirmed that such an individual could not perform Plaintiff's past work. AR 56-57.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 22-30. Specifically, the ALJ found that Plaintiff did not engage in substantial gainful activity from her alleged onset date of July 22, 2013, thought her date las insured of December 31, 2018. AR 24. The ALJ identified the following severe impairment: degenerative disc disease of the cervical spine status-post C5-C7 anterior cervical discectomy and fusion with post laminectomy syndrome. AR 24-25. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. AR 25.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except that she could never climb ladders, ropes, or scaffolds, could occasionally climb ramps or stairs, balance, stoop, kneel, and crouch, could never reach or lift overhead with the bilateral upper extremities, could never crawl, and could tolerate occasional exposure to vibration and hazards such as unprotected heights and heavy mechanical machinery (like a jackhammer or tractor). AR 25-28. With this RFC, the ALJ found that Plaintiff was

4

unable to perform any past relevant work, but there were jobs in the national economy that Plaintiff could have performed, such as marker, cafeteria attendant, and cleaner/housekeeper. AR 29-30. The ALJ therefore concluded that Plaintiff had not been under a disability at any time from July 22, 2013, the alleged onset date, through December 31, 2018, the date last insured. AR 30.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The

burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

### **DISCUSSION**[3]

Plaintiff argues that the ALJ erred by (1) not properly assessing her borderline age situation; and (2) failing to offer clear and convincing reasons for rejecting her subjective complaints.  (Doc. 23 at p. 1.)

**A.  Borderline Age**

Plaintiff was 54-years old on her date last insured for disability insurance benefits, (AR 29), which is defined as an individual closely approaching advanced age. *See* 20 C.F.R. § 404.1563(d).  At age 55, she would have been considered an individual of advanced age. *See* 20 C.F.R. § 404.1563(e). "Age is significant to the disability determination." *Valentin v. Saul*, No. 2:18-cv-02394 AC, 2020 WL 91997, at *4 (E.D. Cal. Jan. 8, 2020).  Once a claimant establishes that she suffers from a severe impairment that prevents her from doing any past work, the burden shifts to the Commissioner to "show that the claimant can perform some other work that exists in significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Valentin*, 2020 WL 91997, at *4.  There are two ways for the Commissioner to meet this burden: "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical–Vocational Guidelines ['the grids'] at 20 C.F.R. pt. 404, subpt. P, app. 2." *Tackett*, 180 F.3d at 1101 (emphasis in original).

The grids consist of a matrix of the "four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 461–62 (1983) (footnotes omitted). There are three age categories: younger person (under age 50), person closely approaching advanced age (age 50–54), and person of advanced age (age 55 or older). 20 C.F.R. § 404.1563(c)–(e). "A 'borderline [age] situation' occurs if the

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

claimant is 'within a few days to a few months of reaching an older age category' and would be found 'not disabled' if the category for the claimant's chronological age were used, but 'disabled' if the older age category were applied. *Valentin*, 2020 WL 91997, at *4 (quoting 20 C.F.R. § 404.1563(b).) The relevant regulation states:

> We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

*Id.* "The ALJ has discretion to determine the applicable age category in a borderline situation; judicial review is limited to the question whether the ALJ considered whether to use the older age category rather than applying the categories mechanically." *Valentin*, 2020 WL 91997, at *5 (citing *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071, 1072 (9th Cir. 2010), cert. denied, 563 U.S. 975 (2011)).  In other words, the regulation "requires only that the ALJ consider whether to use the older age category; it does not impose any obligation to make express findings incorporated in the ALJ's opinion."  *Lockwood*, 616 F.3d at 1073.

Here, the ALJ satisfied the requirement that she consider whether to use the older age category. Indeed, the ALJ noted that Plaintiff was 54 years and was a person closely approaching advanced age on the date last insured.  AR 29.  The ALJ also expressly reasoned:

> Although a borderline age situation exists because the claimant is within a few days to few months of attaining the next higher age category and use of the higher age category would result in a finding of "disabled' instead of "not disabled", use of this age category is not supported by the limited adverse impact of all factors on the claimant's ability to adjust to other work.  The claimant is within six months of the higher age category, but treatment notes indicate that she is continuing to improve.  The claimant's limitations also do not significantly erode the light exertional work occupational base.

AR 29.   It is evident from the decision that the ALJ did not "apply the age categories mechanically" because the ALJ evaluated the impact of all factors on Plaintiff's ability to adjust to other work.  AR 29.  Further, the ALJ relied on the testimony of a vocational expert before she found that Plaintiff was not disabled.  AR 30.

7

Plaintiff relies on the Program Operations Manual System ("POMS") to identify certain adverse vocational factors in a borderline age situation and to argue that the ALJ should have applied the higher age category. (Doc. 23 at pp, 19- 21.) However, POMS constitutes an agency interpretation that does not impose judicially enforceable duties on the ALJ. *Lockwood*, 616 F.3d at 1073. As the Ninth Circuit has expressed, the regulation at issue requires only that the ALJ consider whether to use the older age category. *Id.* The ALJ here satisfied that requirement.

### B. Plaintiff's Subjective Complaints

Plaintiff next argues that "the ALJ failed to set forth any clear and convincing reasons for discounting Plaintiff's symptoms or identify evidence that was inconsistent with her complaints." (Doc. 23 at p. 22.)

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (2004). First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but discounted her statements concerning the intensity, persistence and limiting effects of those symptoms. AR 26. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

The Court finds that the ALJ provided clear and convincing reasons to discount Plaintiff's subjective complaints. First, the ALJ found that Plaintiff's allegations were not entirely consistent with the medical evidence. AR 26, 28. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). For example, the ALJ contrasted Plaintiff's allegations that the cervical spine surgery helped, but did not alleviate her pain, with subsequent physical examinations that indicated improved range of motion and subsequent MRIs reflecting stable improvement in her

8

spine. AR 27, 28. In particular, the ALJ noted that a cervical spine MRI on July 22, 2014, showed only mild to moderate neural foraminal narrowing after the anterior cervical fusion. AR 27, 312. Plaintiff's range of motion continued to improve, and she maintained normal strength throughout the upper and lower extremities. AR 27, 287-89. An EMG/nerve conduction study in March 2015 revealed no cervical radiculopathy of her bilateral upper extremities. AR 27, 614. The ALJ also found it significant that a June 2017 MRI of the cervical spine showed improved cervical alignment with essentially normalization of cervical lordosis with only mild cervical straightening and no evidence of significant central spinal stenosis. AR 27, 310. Additionally, the ALJ identified that treatment records indicated some fatigue but improvement with gabapentin. AR 27, 321-324 (neck pain stable on gabapentin), 467 (neck pain improved with gabapentin), 485 (same). The ALJ further identified that a cervical spine MRI completed on June 24, 2019, showed an essentially stable MRI cervical spine from her June 2017 MRI, and Plaintiff had only mild central spinal stenosis. AR 27, 421.

To the extent Plaintiff suggests an alternative interpretation of the evidence, this is not sufficient to establish reversible error. If the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020), *citing Burch*, 400 F.3d at 679.

Second, the ALJ considered that Plaintiff's treatment improved with gabapentin, acknowledging Plaintiff's own testimony that gabapentin temporarily alleviated her pain and that she no longer experienced side effects from the medication. AR 28, 43-44. The effectiveness of medication or treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be effectively controlled with medication are not disabling for the purpose of determining eligibility for SSI benefits."). Plaintiff has not challenged this reason for discounting her subjective complaints.

///

///

1	Third, the ALJ discounted Plaintiff's subjective allegations based on her daily activities. An ALJ may properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"), superseded by regulation on other grounds.  Here, the ALJ cited evidence that Plaintiff is able to drive, shop for groceries with her daughter, help care for her grandchildren, and feed her dog.  AR 28, 47.

Plaintiff argues that she did not testify to an unimpaired ability to do household chores, self-care, and errands, but that she has limited ability to perform these tasks.  Plaintiff asserts that her modified daily activities are consistent with her alleged limitations. (Doc. 23 at p. 23.) However, even where a plaintiff's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Molina*, 674 F.3d at 1113.

Based on the above, the Court finds that the ALJ did not err in the evaluation of Plaintiff's subjective complaints.  Even if one of the reasons for discounting Plaintiff's subjective complaints was invalid, any such error is harmless because the ALJ provided other valid reasons for discounting Plaintiff's subjective testimony. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-63 (9th Cir. 2008) (finding that two invalid reasons to reject a claimant's testimony were harmless error where the ALJ articulated two other reasons supported by substantial evidence in the record); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record").

## **CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's motion for summary judgment and her appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in

favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Angelica M. Avila.

IT IS SO ORDERED.

Dated: **April 17, 2023**          /s/ *Barbara A. McAuliffe*
                              UNITED STATES MAGISTRATE JUDGE